# United States Tax Court

T.C. Summary Opinion 2023-14

NOAH SCHMERLING AND SUSANA SCHMERLING,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 342-18S.                                        Filed April 4, 2023.

————————

Noah Schmerling and Susana Schmerling, pro se.

*Daniel C. Chavez* and *Michael R. Park*, for respondent.

## SUMMARY OPINION

CARLUZZO, *Chief Special Trial Judge*: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the Petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this Opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated October 23, 2017 (notice), respondent determined a deficiency in petitioners' federal income tax for 2014 (year in issue) and a section 6662(a) accuracy-related penalty. Respondent has now conceded the section 6662(a) penalty.

————————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar unless indicated otherwise.

The issues for decision are whether (1) Mr. Schmerling (petitioner) was engaged in the trade or business of auto sales other than as an employee of McKenna Motors BMW (McKenna) and (2) petitioners are entitled to deduct various expenses related to petitioner's employment with McKenna, and if so, how those deductions must be claimed.

*Background*

Some of the facts have been stipulated and are so found. When the Petition was filed, petitioners resided in California.

Petitioner was hired as an automobile salesman in 2008 by McKenna. McKenna operated under a franchise from BMW of North America, LLC (BMW), for selling BMW automobiles. Between 2008 and the year in issue, petitioner was promoted to corporate/VIP sales manager for McKenna, and his duties expanded to include managing the used car fleet.

As the used car fleet manager, petitioner had various duties, including purchasing used cars at auctions for resale at McKenna. He personally attended used car auctions, estimated the value of a car presented for auction, and decided whether and how much to bid on it. McKenna provided the funds to purchase the used cars. The used cars purchased at auction were resold by McKenna, not petitioner, and the company profited or suffered a loss from each resale of a car purchased at auction.

The Form W–2, Wage and Tax Statement, McKenna issued to petitioner for 2014 shows $206,506 in wages and commissions that petitioner earned during that year. In addition to the income reported on the Form W–2, petitioner was compensated by others in connection with his position at McKenna. The sources of petitioner's additional income and the circumstances that generated that income are summarized in the following paragraphs.

BMW offered a performance bonus program (program) for sales managers. The program provided cash awards to eligible individuals who met or exceeded various goals set by BMW. Petitioner was eligible for and participated in the program. The program also provided for severe sanctions if a participant abused its benefits. According to the program rules,

[i]f it is determined that a payment was made based on fraudulent reporting, the Center will be charged back through their parts account the entire amount awarded to all of its employees under the Performance Bonus Program. In addition, those individuals involved in the fraudulent reporting will not be eligible to participate in future Performance Bonus programs.

The references to "Center" and "its" are to McKenna. Apparently, if any one participant violated the program rules, all of the bonus payments to all participants were recoverable. Petitioner received compensation through the program, and he was issued Form 1099–MISC, Miscellaneous Income, from BMW reporting $37,234 in miscellaneous other income for the year in issue. Neither party takes the position that petitioner was an employee of BMW with respect to the amounts he earned under the program.

In connection with the sale of new and used automobiles, petitioner also earned commissions on the sale of extended warranty service contracts underwritten by Devex, Inc. (Devex). Those commissions, which totaled $2,560, are shown on a Form 1099–MISC that Devex issued to petitioner. Neither party takes the position that petitioner was an employee of Devex with respect to the commissions that he received from Devex.

Petitioner leased a BMW X3 that he used to travel to meet with McKenna's customers and to attend used car auctions during 2014. Petitioner also leased another vehicle that was used exclusively for personal purposes. During the examination of petitioners' return, petitioner prepared and provided respondent with a 2014 calendar in which he recorded each day's mileage and a destination (mileage log). According to the mileage log, petitioner drove 13,844 miles in 2014 to deliver cars to McKenna's customers and attend used car auctions. The mileage log does not identify a beginning destination for any entry, nor does it show a beginning or ending odometer reading. However, McKenna's commission list records corroborate some of the information shown on the mileage log.

In preparation for trial petitioners prepared spreadsheets categorizing expenses shown on credit card and bank statements for 2014. Some of the spreadsheets include a date, the location of the expenditure, the account from which the expense was paid, and an

amount for each entry, while other spreadsheets show only a date or range of dates, an account number, and an amount.

Petitioners' timely filed 2014 Form 1040, U.S. Individual Income Tax Return, was prepared by a certified public accountant (CPA). Petitioner's occupation is shown as "used car salesman." The $206,506 compensation that petitioner received from McKenna is reported as wages on the return. The return includes a Schedule C, Profit or Loss From Business, identifying petitioner as the sole proprietor of an "auto sales, used cars" business. The Schedule C shows income of $39,795 (the sum of the amounts shown on the Forms 1099–MISC issued by BMW and Devex), expenses of $27,307, and a net profit of $12,488.[2]

In the notice respondent determined that the activities described on petitioners' Schedule C (that is, petitioner's participation in the BMW bonus program and his sale of extended warranty service contracts for Devex) did not constitute a trade or business separate and apart from his employment with McKenna. The gross receipts reported on the Schedule C were recharacterized as "other income," and the deductions for expenses reported on the Schedule C were disallowed. Respondent also imposed a section 6662(a) accuracy-related penalty on various grounds.

*Discussion*

As a general rule, the Commissioner's determination of a taxpayer's federal income tax liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the

---

[2] Petitioners also submitted to respondent a Form 1040X, Amended U.S. Individual Income Tax Return (amended return), dated June 9, 2016, prepared by a different paid income tax return preparer from the CPA who prepared their original return. The amended return included an amended Schedule C on which petitioners increased gross receipts by $60,000 and inexplicably subtracted that amount in the computation of adjusted gross income shown on the amended return. Although what petitioners did is less than clear, they also appear to have treated a portion of petitioner's wage and commission income from McKenna as Schedule C income. The Schedule C included with the amended return shows cost of goods sold of $38,320 and expense deductions totaling $46,600. As a result of these changes, the amended return reports no income tax liability, a $15,597 overpayment of income tax, and a refund claim for that amount. Respondent treated the amended return as a claim for refund and apparently denied it. We consider petitioners' claimed deductions, as addressed by the parties, without taking into account how, or on which return, each deduction was claimed.

determination is erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).

I.    *Treatment of petitioners' income and expenses*

We first turn our attention to the manner in which income and expenses in dispute must be treated for federal income tax purposes.

According to petitioners, petitioner's activities with respect to his participation in the BMW bonus program and the sale of Devex extended warranty service contracts constitute a trade or business separate and apart from his status as an employee of McKenna. As petitioners view the matter, the income and expenses related to these activities are properly reported on a Schedule C because the activities, taken together and in and of themselves, constitute a trade or business.[3]

Respondent disagrees. According to respondent, petitioner must treat the amounts received from BMW and Devex as "other income" related to his employment as a car salesman/manager, and any deduction for expenses associated with those earnings must be deducted on Schedule A, Itemized Deductions, as a miscellaneous itemized deduction. *See* § 212(1).

Whether an activity is a trade or business is a question of fact that takes into account a taxpayer's intent and all other relevant facts and circumstances surrounding the activity. *See Commissioner v. Groetzinger*, 480 U.S. 23, 35–36 (1987). Petitioner does not claim that he earned any income from either BMW or Devex independently from his employment with McKenna. The income that petitioner earned from BMW and Devex is inextricably intertwined with and connected to his status as an employee of McKenna. Using common sense as a guide, as *Groetzinger* suggests, we are not persuaded that petitioner's relationships to BMW and Devex provided him with the opportunity to earn a living separate and apart from his status as an employee of McKenna. *See id.* Petitioner "earned his living" during 2014 as a result of his "trade or business" of being an employee of McKenna, not as the proprietor of a separate trade or business independent from his employment with McKenna. That being so, petitioners must treat

---

[3] As described above, as an employee of McKenna, petitioner attended used car auctions to acquire cars to be resold by McKenna. To the extent that petitioners suggest that the activity constitutes a trade or business separate from petitioner's employment with McKenna, their suggestion is rejected without further comment.

petitioner's compensation from BMW and Devex as "other income," as respondent argues.[4]

## II. *Petitioners' claimed deductions*

Next we consider how the expenses attributable to petitioner's employment with McKenna and the expenses attributable to the "other income" are treated. As we view the matter, some of the amounts claimed as deductions on the Schedule C should be reported as unreimbursed employee business expenses, *see* § 162(a), and some should be treated as deductions for expenses incurred for the production of income, *see* § 212(1). Actually, for purposes here, the distinction makes no difference, as the expense deductions are treated in the same manner, and it is unnecessary to allocate the deductions to any of the income-generating activities for purposes of section 67 or otherwise.[5] Consequently, we proceed as though any otherwise allowable deduction is allowed as an unreimbursed employee business expense, recognizing that petitioner is not an employee of either BMW or Devex.

Regardless of how the expenses are categorized, as we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any claimed deduction. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate expenses underlying deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976); *Meneguzzo v. Commissioner*, 43 T.C. 824, 831–32 (1965). A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. *See* § 6001; *Hradesky*, 65 T.C. at 89–90; Treas. Reg. § 1.6001-1(a).

---

[4] The notice does not treat the income petitioner earned and received from BMW or Devex as net earnings from self-employment subject to the tax imposed by section 1402, and respondent does not argue for that treatment here.

[5] The year in issue, 2014, precedes changes to section 67. The Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 11045, 131 Stat. 2054, 2088, amended section 67 by suspending miscellaneous itemized deductions for any taxable year beginning after December 31, 2017, and before January 1, 2026.

Taxpayers may deduct "ordinary and necessary" expenses paid in connection with operating a trade or business. § 162(a); *Boyd v. Commissioner*, 122 T.C. 305, 313 (2004). Performing services as an employee may constitute a "trade or business." *See Primuth v. Commissioner*, 54 T.C. 374, 377 (1970). Whether an expenditure is "ordinary and necessary" is generally a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). To be "ordinary," the expense must be a common or frequent occurrence for the taxpayer's type of business. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). An expenditure is "necessary" if it is "appropriate and helpful" to the taxpayer's business, *Welch v. Helvering*, 290 U.S. at 113, but it must also be "directly connected with or pertaining to the taxpayer's trade or business," Treas. Reg. § 1.162-1(a). On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

Deductions for expenses attributable to travel ("including meals and lodging while away from home"), entertainment, gifts, and the use of "listed property" (as defined in section 280F(d)(4) and including passenger automobiles), if otherwise allowable, are subject to strict rules of substantiation. *See* § 274(d); *Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969); Temp. Treas. Reg. § 1.274-5T(a). With respect to deductions for these types of expenses, section 274(d) requires that the taxpayer substantiate either by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of the expense, (2) the time and place the expense was incurred, (3) the business purpose of the expense, and (4) in the case of an entertainment or gift expense, the business relationship to the taxpayer of each expense incurred. For "listed property" expenses, the taxpayer must establish the amount of business use and the amount of total use for such property. *See* Temp. Treas. Reg. § 1.274-5T(b)(6)(i)(B).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Treas. Reg. § 1.274-5(c)(2)(iii); Temp. Treas. Reg. § 1.274-5T(c)(2). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Temp. Treas. Reg. § 1.274-5T(c)(3).

A.    *Tips and other payments to various individuals*

According to petitioners, they are entitled to deductions for payments petitioner made to other McKenna employees, large volume buyers, and assistant used car auctioneers. It would seem that some of the payments would have violated the BMW program, and we question whether petitioner would have made those payments, considering the consequences that could have resulted. As to other payments, petitioners have failed to substantiate some of the amounts they now claim or otherwise to establish that the expenses related to petitioner's employment with McKenna or to the income petitioner received from BMW or Devex. However, under the circumstances, we find that petitioner paid tips to certain McKenna employees and used car auctioneers and that the tips were ordinary and necessary business expenses. After a careful review of the evidence, and as best we can estimate from what has been submitted, we find that petitioners are entitled to deduct $2,840 for tips and similar payments. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930).

B.    *Advertising, taxes and licenses, and legal and professional services expenses*

Petitioners claim deductions of $4,233, $398, and $1,257 for advertising, taxes and licenses, and legal and professional services expenses, respectively. Other than petitioner's generalized testimony that he incurred expenses for advertising, there is nothing in the record connecting advertising expenses with any of the substantiating documents (e.g., credit card and bank statements) petitioners provided. Petitioners offered no explanation for the deductions for taxes and licenses and legal and professional services expenses.

Petitioners have failed to either substantiate these deductions or offer sufficient specific testimony to allow for deductions. Accordingly, petitioners are not entitled to deduct advertising, taxes and licenses, and legal and professional services expenses.

C.    *Expenses for travel, car and truck, and rent or lease of other business property*

Petitioners claim deductions of $82 for travel expenses, $5,320 for car and truck expenses, and $2,311 for rent or lease of other business property. These deductions relate to the use of petitioner's BMW X3 in his employment as a corporate/VIP sales manager for McKenna. Petitioners did not explain, and it is not otherwise clear, how the

deductions were calculated, i.e., whether by actual expenses or the standard mileage rate. As best we can determine, the deductions include the costs of mileage, car insurance, gas, and the lease.

Petitioners prepared a noncontemporaneous mileage log showing petitioner's use of his leased BMW X3 during 2014. Petitioners' mileage log does not show a beginning destination, nor does it state the business purpose of the use of the automobile, as required under Temporary Treasury Regulation § 1.274-5T(b)(6). Nonetheless, petitioners' mileage log substantially complies with the "adequate records" requirement of the regulations; to the extent their log is deficient, they have provided corroborative evidence sufficient to establish the required elements. *See* Treas. Reg. § 1.274-5(c)(2)(iii); Temp. Treas. Reg. § 1.274-5T(c)(2).

We have reviewed the evidence and compared the mileage log with McKenna's commission list records and petitioners' credit card and bank statements. Taking into account petitioner's personal use of the BMW X3 and the extent to which petitioners have properly substantiated expenses for travel, car and truck, and rent or lease of other business property, we find that petitioners are entitled to deduct $12,000 attributable to actual expenses.

D.   *Home office*

Petitioners claim that they are entitled to a $241 deduction for home office expenses in connection with petitioner's employment with McKenna or the income he earned from BMW or Devex.

In general, a taxpayer is entitled to a deduction for expenses attributable to a portion of the taxpayer's residence if that portion is used (1) exclusively on a regular basis as (2) the taxpayer's principal place of business or (3) a place for meeting with customers, clients, or patients in the normal course of the business. *See* § 280A(c)(1)(A) and (B); *see also Commissioner v. Soliman*, 506 U.S. 168, 172–73 (1993). Petitioners have failed to establish that these requirements have been satisfied in connection with petitioner's employment with McKenna or the income he earned from BMW or Devex. Accordingly, petitioners are not entitled to deduct home office expenses.

E.   *Supplies*

Petitioners now claim that they are entitled to a $2,937 deduction for supplies. Our review of petitioners' credit card and bank statements shows that petitioners paid $2,768 for supplies related to petitioner's

employment with McKenna during the year in issue. Accordingly, petitioners are entitled to deduct $2,768 for supplies.

### F.    *Meals and entertainment*

Petitioners claim that they are entitled to a $1,019 deduction for meals and entertainment. According to petitioners, this deduction relates to amounts petitioner paid for meals to entertain clients and brokers.

With respect to meals paid to entertain clients, a taxpayer must provide records sufficient to establish (1) the amount paid for each meal, (2) the date of the meal, (3) the name and address of the dining establishment, (4) the business purpose of the meal, including the nature of any business discussion, and (5) the business relationship of the person entertained by the taxpayer. *See* § 274(d); *Stroff v. Commissioner*, T.C. Memo. 2011-80; Temp. Treas. Reg. § 1.274-5T(b)(3).

Petitioners' spreadsheet suggests, and their credit card and bank statements confirm, that petitioner paid $6,421.64 for meals during the year in issue. To the extent these payments were for meals with clients or brokers, the substantiating documents do not provide a business purpose for the expenses or a business relationship with the person entertained. Therefore, petitioners are not entitled to deduct meals and entertainment expenses.

### G.    *Other expenses*

Petitioners claim that they are entitled to deduct $9,509 for other expenses attributable to promotion ($2,219), accounting ($750), telephone ($2,781), internet ($811), security ($480), and small tools ($2,468). Petitioner did not offer explanation or evidence of the promotion, accounting, security, and small tools expenses. Petitioner did, however, offer some evidence of telephone and internet expenses.

Petitioner used his cell phone, home phone, and internet for both business and personal purposes. Our review of petitioners' credit card and bank statements, along with statements from petitioners' telephone and internet providers, shows that petitioners paid $1,800.60 for cell phone expenses, $239.88 for home phone expenses, and $599.88 for internet expenses during the year in issue. Considering all the circumstances, we conclude that the costs of the cell phone, home phone, and internet were ordinary and necessary business expenses related to petitioner's employment with McKenna and/or the income he earned

from BMW or Devex. We further find that 50% of services to which the expenses relate were ordinary and necessary business expenses. As a result, petitioners are entitled to deduct $1,320.18 for "other expenses." *See Cohan v. Commissioner*, 39 F.2d at 543–44.

To reflect the foregoing,

*Decision will be entered under Rule 155.*